JAMES O. MATHIS, INDIVIDUALLY AND AS COMMISSIONER OF INDIANA DEPARTMENT OF REVENUE ET AL. *v.* COOPERATIVE VENDORS, INC., AN INDIANA CORPORATION ET AL.

[No. 2-675A140. Filed September 16, 1976. Rehearing denied October 19, 1976. Transfer denied February 4, 1977.]

*Theodore L. Sendak,* Attorney General, *Robert S. Spear, C. Richard Potter,* Deputies Attorney General, for appellants.

*David F. McNamar, Steers, Klee, Sullivan, McNamar & Rogers,* of Indianapolis, *Robert Sheaffer, Sheaffer & Yeager,* of Shelbyville, *Myron H. Budnick, Bushchmann, Carr & Schabel,* of Indianapolis, *Sidney A. Horn,* of Indianapolis, *Gordon Tabor, Wilson & Tabor,* of Indianapolis, for appellees.

SULLIVAN, J.—This appeal challenges the trial court's ruling that the Indiana Gross Retail Tax Act[1] did not apply to the sale of cigarettes from 1963, when it was originally enacted, to 1973, when it was amended to specifically include cigarettes.[2] This suit was commenced on March 29, 1971 as a declaratory judgment action by Cooperative Vendors, Inc., (Cooperative) individually and on behalf of all other distributors and vendors of cigarettes, and by Ray L. Wickler individually and on behalf of other retailers, consumers, and purchasers of cigarettes. The named defendants in that action were James O. Mathis, Mary D. Aikins [Currie] and Jack L. New as individuals and in their respective capacities as Commissioner of the Indiana Department of Revenue, Auditor of the State, and Treasurer of the State. Donald Clark, who succeeded Mathis as Commissioner of Revenue, was substituted by stipulation of the parties. (For convenience, the defendants-appellants will hereinafter be referred to as the Department.)

---

1. Ind. Ann. Stat. 6-2-1-37 *et seq.,* (Burns Code Ed. 1972).
2. Ind. Ann. Stat. 6-2-1-38 (p), (Burns 1976 Supp.).

Cooperative met with representatives of the Department on November 7, 1965, at which time Cooperative said it had not been collecting and would not collect and pay to the Department, a retail sales tax on the cigarettes it sold. Cooperative's position was (and still is) that the sale of cigarettes was exempt from the retail sales tax by virtue of the Cigarette Tax Act of 1947.[3] Since January 1, 1966, Cooperative has collected and paid sales tax on its other retail sales, but not on cigarettes, stating each year on the reporting form that such sales were exempt.

The Department did nothing to enforce a sales tax on cigarettes until January 12, 1971, when it sent Cooperative a notice of assessment of $54,414.71 for the period January 1, 1967 to September 30, 1970. Cooperative filed a petition of protest. A hearing was held on the petition, and it was denied on March 12, 1971.

Cooperative's and Wickler's complaint sought a declaration that packages of cigarettes with tax stamps affixed are per se exempt from sales tax; that the assessment against Cooperative is illegal and void; that the Department be enjoined from collecting the assessment; and that the Department be ordered to return approximately $15,000,000 illegally collected to purchasers with valid, provable, existing claims for the prior three (3) years.

After denying the Department's motion to dismiss and Cooperative's and Wickler's motion for summary judgment, the trial court granted leave to intervene to James Vending Company, Inc. (James), a vendor who had paid sales tax on the sale of cigarettes, and Jack A. Siler, d/b/a Siler Sales, a retailer who had paid the tax. Cooperative and James then moved for partial summary judgment in favor of themselves only. The trial court granted these motions and directed entry of the judgment that the sales tax did not apply to the sale of cigarettes until the Retail Tax Act was amended in 1973. The

3. Ind. Ann. Stat. 6-7-1-1 *et seq.*, (Burns Code Ed. 1972).

court also permanently enjoined the sheriff from executing tax warrants issued against Cooperative. It is from the partial summary judgment that the Department appeals.

Two issues are presented for our decision:

(1) whether the trial court had jurisdiction;
(2) whether the 1963 Retail Tax Act applied to the sale of cigarettes prior to its amendment in 1973.

We hold that the trial court had jurisdiction to consider the merits of the claim for declaratory relief. We further hold that the Retail Tax Act was applicable to sales of cigarettes during the period in question and we reverse the judgment below.

## I.

### THE TRIAL COURT HAD JURISDICTION

This case presents vexatious jurisdictional questions, namely whether the remedial procedure prescribed in the Gross Income Tax Act is the exclusive means of challenging an "assessment" under the Retail Tax Act,[4] and if not, whether a declaratory judgment action is an appropriate vehicle for bringing such a challenge.

### A. COOPERATIVE AND JAMES WERE NOT LIMITED TO PAYING THE TAX AND SUING FOR A REFUND

Ind. Ann. Stat. 6-2-1-19 (Burns Code Ed. 1972) establishes a refund procedure and reads in pertinent part:

"(d) No injunction to restrain or delay the collection of any tax claimed to be due under the provisions of this act shall be issued by any court, *but in all cases in which, for any reason, it be claimed that any such tax about to be collected is wrongful or illegal in whole or in part, the remedy, except as otherwise expressly provided in this act, shall be by payment and action to recover such tax as provided in this section.*" (Emphasis Supplied).

---

4. The Retail Tax Act is an amendment to the Gross Income Tax Act. Ind. Ann. Stat. 6-2-1-1 *et seq.,* (Burns Code Ed. 1972).

The Department contends that 6-2-1-19, *supra*, by its explicit terms requires that Cooperative first pay the assessment, then sue for a refund. Since Cooperative did not follow this route in challenging the applicability of the sales tax to cigarettes, the Department argues that the trial court had no jurisdiction over the subject matter of this suit and thus could not render judgment on the merits.

Two recent cases lend facial support to the Department's position. *State ex rel. Indiana Dept. of State Revenue* v. *Marion Cir. Ct.* (1971), 255 Ind. 501 at 504, 265 N.E.2d 241 at 243, and *Marhoefer Packing Co., Inc. v. Indiana Dept. of State Revenue* (1973), 157 Ind. App. 505, 301 N.E.2d 209 at 213 both make the blanket statement that 6-2-1-19 is "the sole and exclusive remedy available to question the legality of the imposition of a tax under the Indiana Gross Income Tax Law." Despite this broad language, we hold that Cooperative was not limited in its remedies to payment of the tax and suit for a refund.

The tax burden is placed upon the retail purchaser in both the Cigarette Tax Act and the Retail Tax Act. Cooperative is not a taxpayer, but an agent of the state for purposes of collecting both the cigarette tax and the sales tax. The Cigarette Tax Act, Ind. Ann. Stat. 6-7-1-1 (Burns Code Ed. 1972), says:

"It is the intent and purpose of this act [6-7-1-1—6-7-1-36] to levy a tax on all cigarettes sold, used, consumed, handled or distributed within this state, and to collect the tax from the person who first sells, uses, consumes, handles or distributes the cigarettes. It is further the intent and purpose of this act, that whenever any cigarettes are given for advertising or any purpose whatsoever, they shall be taxed in the same manner as if they were sold, used, consumed, handled, or distributed in this state. *Notwithstanding any other provisions contained in this act, the liability for the excise taxes imposed hereby shall be conclusively presumed to be on the retail purchaser or ultimate consumer, precollected for convenience and facility only.* When such taxes are paid by any other person, such payment shall be considered as an advance payment and shall be added to the price of the

cigarettes and recovered from the ultimate consumer or user. Distributors, wholesalers, or retailers may state the amount of the tax separately from the price of such cigarettes on all price display signs, sales or delivery slips, bills and statements which advertise or indicate the price of such cigarettes." (Emphasis supplied).

That Act further provides that:

*"[d]istributors who hold certificates and retailers shall be agents of the state of Indiana in the collection of the taxes imposed by this act* [6-7-1-1—6-7-1-36] and the amount of the tax levied, assessed and imposed by this act on cigarettes sold, exchanged, bartered, furnished, given away or otherwise disposed of by distributors or to retailers. Distributors who hold certificates shall be agents of the department to affix the required stamps and shall be entitled to purchase said stamps from the department at a discount of four per cent [4%] of the amount of the tax stamps so purchased, as compensation for their labor and expense." (Emphasis supplied). Ind. Ann. Stat. 6-7-1-17 (Burns Code Ed. 1972).

The Retail Tax Act designates the retail merchant as a State agent for collecting the tax:

"6-2-1-37 [64-2651]. Gross retail tax imposed—Rate—Collection by retail merchants.—In addition to the gross income tax imposed by this act [6-2-1-1—6-2-1-53], an additional excise tax, to be known as the state gross retail tax, is hereby imposed on transactions of retail merchants constituting selling at retail, as defined in section 37 [6-2-1-38] of this act, occurring on or after July 1, 1963, subject to the exceptions and exemptions provided in section 39 [6-2-1-39] of this act, at the rate of two per cent [2%] on the gross income derived therefrom. *Such tax shall be borne by the purchaser and shall be paid by the purchaser to the retail merchant, who shall collect the tax as agent for the state, at the rate fixed herein. . . .*" (Emphasis supplied).

In defining the liability of retail merchants the Retail Tax Act provides:

"6-2-1-49 [64-2664]. Collection of sales and use tax by merchant as agent of state—Liability of merchant.— (a) *The state gross retail tax and the use tax shall be collected by the retail merchant, as agent for the state of Indiana, from the purchaser of property or services furnished in the transaction subject to said taxes as a separate added amount*

*not part of the price of consideration.* Notwithstanding the amount of state gross retail tax or use tax collected from purchasers the retail merchant shall be liable for and shall remit, as the case may be, two per cent [2%] of the gross income of the retail merchant from taxable transactions required to be included in his return for the reporting period, or two per cent [2%] of the sale price from the sale of property subject to the use tax required to be included in such return. *Every retail merchant and in the case of a corporate or partnership retail merchant every officer, employee, or member of such retail merchant who as such officer, employee or member is under a duty to remit such taxes shall be personally liable for such taxes, which shall constitute a trust fund in the hands of the retail merchant and shall be owned by the state.* Any retail merchant and in the case of a corporate or partnership retail merchant any officer, employee, or member of such retail merchant who as such officer, employee or member is under a duty to remit such taxes and who shall intentionally fail to remit such taxes to the department as required by this chapter [6-2-1-1—6-2-1-53] shall be guilty of the crime of theft, as provided in IC 1971, 35-17-5-4 (Burns' § 10-3031) and shall be fined in any sum not exceeding five thousand dollars [$5,000] or imprisoned for not less than one [1] year nor more than ten [10] years, or both, as provided in IC 1971, 35-17-5-12 (Burns' § 10-3039)."[5] (Emphasis supplied).

Civil and criminal warrants were in fact issued against Cooperative. No similar criminal penalty exists to punish a taxpayer who fails to pay gross income tax due. Ind. Ann. Stat. 6-2-1-18 (Burns Code Ed. 1972) establishes statutory procedures for collecting taxes due and owing under the Gross Income Tax Act, and subsection (b) thereof specifically designates such unpaid tax as a debt due to the State. These meaningful distinctions convince us that the legislature did not consider retail merchants, acting as collection agents for the State, to be "taxpayers" in the sense that term is used in the Gross Income Tax Act with respect to refund procedures.

6-2-1-19, *supra,* uses the terms "any person" and "any taxpayer" in describing who may seek a refund from the Department. These words are used interchangeably, and may be

---

5. This section was amended in 1973 in a manner not relevant to this appeal.

considered synonomous. The Department agrees with this interpretation. *See* 4 Burns Admin. Rules and Regs. 64-2614a, instructions 1-1 and 1-4. Thus, 6-2-1-19 applies only to taxpayers. Since Cooperative and James are not taxpayers with respect to the sales tax, they are not limited to the remedy prescribed in that section.

The Department's "notice of assessment" against Cooperative as a fiduciary collecting taxes on behalf of the State rather than a taxpayer owing a debt to the State, would more properly have been designated a "demand for funds required to be held by Cooperative as trustee for the State." The Department did in fact, however, follow the "assessment" procedure provided by Ind. Ann. Stat. 6-2-1-17 (Burns Code Ed. 1972). When such an assessment has been made, 6-2-1-17 provides a mechanism whereby the person assessed may file a protest and have a hearing within the Department. Under the circumstances it was appropriate for Cooperative to resort to that mechanism. Cooperative filed a protest, a hearing was had and the protest denied.

There is no provision for appeal from the denial of a protest under 6-2-1-17, *supra*. However, it is well-established under Indiana law that due process and the separation of powers doctrine demand that judicial review of administrative decisions be available. *City of Indianapolis* v. *John Clark, Inc.* (1964), 245 Ind. 628, 196 N.E.2d 896; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399; *Peden* v. *Board of Review of Cass County* (1935), 208 Ind. 215, 195 N.E. 87. The denial of a protest by the Department is a final administrative order which is judicially reviewable for illegality, fraud, or abuse of discretion. Cooperative properly sought such judicial review by its declaratory judgment action.

## B. STATE OFFICIALS MAY BE NAMED AS DEFEND-ANTS IN A DECLARATORY JUDGMENT ACTION

The Department argues that the true party in interest in this suit is the State, not the officials named as defendants, and that the State cannot be sued under the Declaratory Judgment Act absent its consent.

The Department contends that the nature of the suit, rather than the naming of defendants, determines whether the action is one against the State. Support for this contention is found primarily in federal cases determining whether the jurisdictional requirements of the 11th Amendment have been met. *See Ford Motor Co.* v. *Department of Treasury of Indiana* (1945), 323 U.S. 459, 65 S.Ct. 347; *People of Colorado* v. *District Court* (10th Cir. 1953), 207 F.2d 50. While this principle has been stated in Indiana, (*See State* v. *Young* (1958), 238 Ind. 452, 458, 151 N.E.2d 697, 700) courts of this State have been more inclined to accept plaintiffs' designations of defendants. *See State ex rel. Mass Transportation Auth.* v. *Indiana Review Board* (1969), 144 Ind. App. 63, 88-90, 253 N.E.2d 725, 732-3, (opinion on petition for rehearing) ; *Communications Workers of America, Local No. 5790* v. *Indiana Employment Security Bd.* (1964), 136 Ind. App. 601, 202 N.E.2d 176. This inclination has been particularly apparent in declaratory judgment actions. Indiana courts have acknowledged the general rule that the State cannot be sued without its consent, but have allowed plaintiffs in declaratory judgment actions to circumvent this prohibition by naming State officials rather than the State as defendants. *State* v. *LaRue's, Inc.* (1958), 239 Ind. 56, 154 N.E.2d 708; *Sendak* v. *Allen* (1975), 164 Ind. App. 589, 330 N.E.2d 333; *Wright* v. *Kinnard* (1969), 144 Ind. App. 286, 245 N.E.2d 835. *See also, Welsh* v. *Sells* (1963), 244 Ind. 423, 192 N.E.2d 753, in which the constitutionality of the Retail Tax Act was challenged in a declaratory judgment action.

We also note that those cases which have held that the State cannot be sued without its consent are based on Article 4, § 24 of the Indiana Constitution. That article permits suits against the State without its consent "as to all liabilities" only if provided by "general law", i.e., by Act of the legislature. The article, however, does not preclude citizens from obtaining judicial declaration of rights, privileges or immunities as against the State, nor does it contain any restrictions as to a particular procedural vehicle for assertion of those rights, privileges or immunities. Thus, while we find merit in Cooperative's argument that prohibition against suing the State via a declaratory judgment action is unreasonable, particularly in light of the abrogation of sovereign immunity in *Campbell* v. *State* (1972), 259 Ind. 55, 284 N.E.2d 733, we need not resolve that question. Rather, we conclude that the declaratory judgment suit here is within the purview of *State* v. *LaRue's, Inc., supra, Sendak* v. *Allen, supra,* and *Wright* v. *Kinnard, supra.* By bringing suit against state officials in their individual and representative capacities, Cooperative and James have avoided the eviscerated, if not illusory, prohibition precluding suits against the State without consent.

## II.

## THE 1963 RETAIL TAX ACT APPLIED TO THE SALE OF CIGARETTES

To resolve the fundamental dispute in this case, we must consider the interplay of three statutory taxation provisions: The Cigarette Tax Act, Ind. Ann. Stat. 6-7-1-1, *et seq.,* The Retail Tax Act, 6-2-1-37, *et seq.,* as originally enacted in 1963 and, The Retail Tax Act as amended in 1973, Ind. Ann. Stat. 6-2-1-38 (p). The Cigarette Tax Act Ind. Ann. Stat. 6-7-1-1 *et seq.* (Burns Code Ed. 1972), enacted in 1947, provides for an excise tax on cigarettes "sold, used, consumed, handled, or distributed within this state . . ." to be collected "from the person who first sells, uses, consumes, handles, or distributes

the cigarettes." Payment of the tax is evidenced by stamps affixed to the packages and cancelled.

Ind. Ann. Stat. 6-7-1-14 (Burns Code Ed. 1972) provides:

"6-7-1-14 [64-2914]. Stamps as evidence of levy and payment of tax.—All taxes levied, assessed and imposed by this act [6-7-1-1—6-7-1-36] shall be paid and the payment thereof evidenced by the purchase of stamps and by affixing the same to the individual packages, cigarette papers, wrappers, and tubes and duly canceling said stamps, as hereinafter provided in this act, but *there shall be no further tax assessed, imposed or collected by virtue of this act, upon the sale or use of any package of cigarettes, cigarette papers, wrappers, or tubes upon which said stamps have been previously affixed as provided by this act.*" (Emphasis supplied).

The trial court found that this prohibition against assessment of further taxes extends to the Retail Tax Act, Ind. Ann. Stat. 6-2-1-37 *et seq.,* (Burns Code Ed. 1972), enacted in 1963. That Act provides that:

". . . an additional excise tax, to be known as the state gross retail tax, is hereby imposed on transactions of retail merchants constituting selling at retail, as defined in section 37 [6-2-1-38] of this act, occurring on or after July 1, 1963, subject to the exceptions and exemptions provided in section 39 [6-2-1-39] of this act, at the rate of two per cent [2%] on the gross income derived therefrom. Such tax shall be borne by the purchaser and shall be paid by the purchaser to the retail merchant, who shall collect the tax as agent for the state, at the rate fixed herein, . . . ." 6-2-1-37, *supra.*

The trial court further found that the legislature did not intend to impose the sales tax on cigarettes until 1973, when it amended the Retail Tax Act to specifically impose the tax on cigarettes. Ind. Ann. Stat. 6-2-1-38(p), *supra,* provides:

"(p) Every person engaged in the business of selling motor fuel, as defined in IC 1971 6-6-1 [6-6-1-1—6-6-1-36], at retail, or who is engaged in the business of selling cigarettes, as defined in IC 1971 6-7-1 [6-7-1-1—6-7-1-36], at retail, shall be deemed to be a retail merchant in respect thereto. The full amount of the sales price of each item, including the amount of the taxes imposed by IC 1971 6-6-1 and 6-6-2

[6-6-2-1—6-6-2-16] or IC 1971 6-7-1 [6-7-1-1—6-7-1-36] and collected from the purchaser at the time of the sale shall be included in the gross income subject to the sales gross retail tax."

The Department argues that the trial court erred in interpreting the 1973 amendment to the Retail Tax Act as a change in the law rather than a clarification of it. Cooperative and James, on the other hand, argue that the legislature intended the excise tax in the Cigarette Tax Act to be exclusive, and that the 1963 Retail Tax Act did not amend, modify, or repeal 6-7-1-14, *supra*, which expressed that intention. They assert that the law did not change until 1973 when the legislature added 6-2-1-38(p), *supra*, specifically including sales of cigarettes as taxable transactions.

The Department argues that the intent of the legislature to tax the sale of cigarettes in the 1963 Retail Tax Act can be inferred from its acquiescence in the Department's collection of the tax between 1963 and 1973. *See, Economy Oil Corp.* v. *Indiana Dept. of State Revenue* (1974), 162 Ind. App. 658, 321 N.E.2d 215. Cooperative answers that there can be no legislative acquiescence here because the Department had no fixed policy of collecting a tax on the sale of cigarettes, but rather selectively enforced it. Specifically mentioned is the period from 1965 to 1971 when the Department made no effort to collect such taxes from Cooperative despite knowledge stemming from the 1965 meeting with Cooperative that Cooperative asserted the illegality of such a tax. Cooperative argues that the Department is now estopped from asserting "acquiescence". Since we do not rely upon legislative acquiescence as a basis for our decision we need not reach the estoppel question.

We hold that the trial court erred in construing the Cigarette Tax Act and the Retail Tax Act to immunize cigarettes from the sales tax until the Retail Tax Act was amended in 1973. Cooperative and James would have us read portions of the Cigarette Tax Act into the

Retail Tax Act of 1963. We decline to do so. Although both statutes result in an excise tax which increases the price of cigarettes, they are discrete statutes. Thus when the Cigarette Tax Act provided in section 6-7-1-14, *supra,* that ". . . there shall be no further tax assessed, imposed or collected *by virtue of this act,* upon the sale or use of any package of cigarettes . . . ," (Emphasis supplied), it clearly stated that taxes may be collected on a particular package of cigarettes only once under the Cigarette Tax Act.

The Cigarette Tax is collected by the state from "the person who first sells, uses, consumes, handles, or distributes the cigarettes." 6-7-1-1, *supra.* The cigarettes may pass through several hands after the tax is paid before reaching the retail purchaser. To prevent the Cigarette Tax from being imposed at every stage of the distribution process, 6-7-1-14, *supra,* provides for stamps to be affixed to individual packages as evidence of the payment of the tax. Once those stamps are affixed, no further Cigarette Tax may be imposed or collected. This section is designed to prevent multiple *cigarette* taxes from being imposed on a single package of cigarettes, not to establish an exclusion on taxation of cigarettes which automatically carries forward into all other possible taxation statutes.

Cooperative and James would not only have us read 6-7-1-14, *supra,* into the Retail Tax Act, but also Ind. Ann. Stat. 6-7-1-2 (Burns Code Ed. 1972), which defines "cigarettes" for purposes of the Cigarette Tax Act. That definition excludes cigars, pipe tobacco, chewing tobacco, snuff, and any other tobacco products which are not made into a roll for smoking. Cooperative and James argue that since cigarettes are not defined in the Retail Tax Act, and since "tobacco products" are referred to tangentially in the definition of what constitutes gross income for wholesale grocers (6-2-1-1(s), *supra*), the legislature intended to classify cigarettes separate and apart from other "tobacco products" and to exclude their sale from taxation.

We find this argument unpersuasive. There is no need for the Retail Tax Act to define cigarettes. 6-2-1-37, *supra,* imposes a tax on "transactions of retail merchants constituting selling at retail, as defined in section 37 [6-2-1-38] of this act. . . ." The definition of transactions constituting "selling at retail" in 6-2-1-38 refers to 6-2-1-1 (k), *supra,* which reads in pertinent part: .

"(k) The term 'selling at retail' means and includes only a transaction by a 'retail merchant' by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferor's regularly conducted business and when such property is acquired by the transferor for the purpose of resale and is acquired by the transferee for any purpose other than the purposes designated in subsection (a) of section 3 [6-2-1-3] of this chapter. . . ."

Cigarettes clearly fall within the category of "tangible personal property" defined in 6-2-1-1 (k), *supra.* It would have been impossible for the legislature to define every product whose sale would be subject to the Retail Tax Act.

Our Supreme Court said in *Mogilner* v. *Metropolitan Plan Commission* (1957), 236 Ind. 298, 328, 140 N.E.2d 220, 235, quoting from *State ex rel. Bd. of Commn'r. of Cnty. of Hendricks* v. *Bd. of Commn'rs. of the Cnty. of Marion* (1908), 170 Ind. 595, 85 N.E. 513:

". . . one statute may adopt a part of or all of another statute *by a specific and descriptive reference thereto,* and the effect is the same as if the law or statute, or the part thereof adopted, had been written into the adopting statute . . . *State ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 619, 85 N.E. 513. See also, *State* v. *Gerhardt* (1896), 145 Ind. 439, 452, 453, 44 N.E. 469." (Emphasis supplied).

Nowhere in the Retail Tax Act, however, is reference made to the Cigarette Tax Act. The sections of the Cigarette Tax Act which define cigarettes and which exclude further taxes are not, therefore, incorporated by reference into the Retail Tax Act. Nor do we consider the Cigarette Tax Act and the

Retail Tax Act to be *in pari materia.* It is true that both are excise taxes, and that both ultimately levy a tax on the retail purchaser of cigarettes. One, however, specifically levies "a tax on *all cigarettes* sold, used, consumed, handled, or distributed within this state . . . ," 6-7-1-1, *supra,* while the other imposes a tax *"on transactions of retail merchants* constituting selling at retail. . . ." 6-2-1-37, *supra.* (Emphasis supplied). One is a tax on a particular product, the other on a transaction. While the sales tax has the effect of increasing the price of a package of cigarettes, it is the buying/selling transaction that is being taxed, not the cigarettes themselves. *See, Welsh* v. *Sells, supra,* 244 Ind. at 432, 192 N.E.2d at 758; *Hinton* v. *Dragoo* (1922), 77 Ind. App. 563 at 569, 134 N.E. 212 at 214.

Cooperative and James assert that construing the 1963 Retail Tax Act prior to 1973 to include a tax on the sale of cigarettes is to say that the 1973 amendment was a useless act. The hindsight which our construction provides lends substance to this view. However, at the time the amendment was enacted this lawsuit was in progress and the legislature may well have been in doubt as to its outcome. By passing the amendment, they insured that regardless of the outcome of this suit the sale of cigarettes would be taxed at least from January 1, 1973. We will not require the legislature to either await the termination of pending litigation to clarify ambiguous language and correct oversights in statutes or risk having amendments enacted for that purpose conclusively presumed to be a change of legislative intent.

The judgment is reversed and remanded for entry of judgment consistent with this opinion.

Buchanan, P.J., concurs; White, J., concurs.

NOTE.—Reported at 354 N.E.2d 269.