**INDIANA EBY–BROWN CO., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 45T10–9309–TA–00073.

Tax Court of Indiana.

March 21, 1995.

Transfer Denied July 25, 1995.

Maurice P. Raizes, Cohon, Raizes & Regal, Chicago, IL, David J. Brandewie, Merrillville, for petitioner.

Pamela Carter, Atty. Gen., Kathryn Symmes Kirk, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Indiana Eby–Brown Co. (Eby–Brown) appeals a final determination of the Indiana Department of State Revenue (the Department), assessing a cigarette tax liability for the period of August 28, 1989, through May 1, 1992 (the audit period).

## ISSUE

Whether a cigarette distributor is liable for cigarette tax on cigarettes lost, stolen, or otherwise missing, from its possession.

## FACTS AND PROCEDURAL POSTURE

Eby–Brown, an Indiana corporation with its principal place of business in Indianapolis, is a cigarette distributor as defined in IND. CODE 6–7–1–6. *Joint Stipulation* at ¶ 3. Eby–Brown distributes cigarettes, tobacco products, and sundry items throughout Indiana, Kentucky, Ohio, and West Virginia.

During the audit period, the Department inspected Eby–Brown's monthly cigarette tax returns. These returns reflected: (1) Eby–Brown's inventory of unstamped cigarettes and cigarette stamps at both the beginning and end of the audit period; (2) Eby–Brown's purchases of unstamped cigarettes and cigarette stamps during the audit period; and (3) the number of cigarettes Eby–Brown sold during the audit period in interstate commerce and to Indiana distributors. *See Joint Stipulation* at ¶ 5. Based on the returns, the Department issued an assessment against Eby–Brown for $302,629.20 in outstanding cigarette tax liability, plus penalties and interest.

Eby–Brown protested the Department's assessment, asserting that it was erroneous because it gave no consideration to shrinkage factors such as cigarette inventory theft and cigarette stamp mutilation.[1] The Department held a hearing on May 26, 1993, and, in its subsequent Letter of Finding, denied Eby–Brown's protest. Eby–Brown now appeals to this court. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The court reviews appeals from the Department *de novo*. *Maurer v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 607 N.E.2d 985, 986. Therefore, the court is bound by neither the issues nor the evidence presented at the administrative level. *Id.*

## DISCUSSION AND ANALYSIS

### A. THE CIGARETTE TAX ACT

The Indiana Cigarette Tax Act (the Act), IND.CODE 6–7–1, imposes an excise tax on cigarettes (the tax). While the tax is conclusively presumed to be on the ultimate consumer, the State is assured payment by precollecting the tax from cigarette distributors. *See* I.C. 6–7–1–1. *See also* I.C. 6–7–1–17. As evidence that the tax has been paid, cigarette distributors purchase cigarette stamps from the Department to place on

---

1. Theft and shrinkage, prevalent problems in the cigarette industry, "occur through the complicity of the employees of the distributors and ... prevail even though many precautionary methods are installed by distributors, such as surveillance cameras, tight entrance and exit security requirements, locked cages for storing cigarettes, periodic lie detector tests, anti-theft devices, more frequent inventory taking, etc." *Joint Stipulation* at ¶ 6.

individual cigarette packages. I.C. 6–7–1–14. Cigarette distributors can then recover the tax they pay from the ultimate consumer through the purchase price of the cigarettes. I.C. 6–7–1–1.

## B. THE DISPUTE

■ But what about cigarettes that never witness a retail transaction because they have been lost, stolen, or are otherwise missing from the cigarette distributor's possession? Does a cigarette distributor recover the tax it prepays on those cigarettes? Eby–Brown asserts that the legislature intended to tax cigarettes that 1) exit the stream of interstate commerce for final distribution in Indiana and 2) are disposed of voluntarily. In other words, only those cigarettes relinquished with the distributor's consent, whether they are sold or voluntarily given away, are taxable. Consequently, Eby–Brown maintains that cigarettes lost, stolen, or otherwise missing, from its possession are not taxable.

The Department, however, contends that the intent of the Act is to tax *all* cigarettes that are to be sold, used, consumed, handled, or distributed within the state. The Department further maintains that because the tax is collected from the first person to either sell, use, consume, handle, or distribute the cigarettes, it makes no difference whether the cigarettes are disposed of voluntarily or involuntarily. The Department maintains that because Eby–Brown was the first to take one of these actions, it is liable for the tax on all cigarettes, including those that have been lost or stolen.

■ Because the legislative intent embodied in a statute constitutes the law, *Shoup Buses, Inc. v. Indiana Department of State Revenue* (1994), Ind.Tax, 635 N.E.2d 1165, 1168, the court must give statutory words and phrases their plain, ordinary, and usual meaning. *3551 Lafayette Road Corp. v. Indiana Dep't of State Revenue* (1994), Ind. Tax, 644 N.E.2d 199, 201. Moreover, statutes must be read "within the context of the entire act of which they are a part." *Miller v. Gibson County Solid Waste Management Dist.* (1993), Ind.Tax, 622 N.E.2d 248, 252. In this case, Eby–Brown cites five statutes to support its position: I.C. 6–7–1–1; I.C. 6–7–1–12; I.C. 6–7–1–17; I.C. 6–7–1–27; and I.C. 6–7–1–13.5. Accordingly, the court will examine Eby–Brown's argument under each statute.

### 1. I.C. 6–7–1–1

I.C. 6–7–1–1 provides:

It is the intent and purpose of this chapter to levy a tax on all cigarettes sold, used, consumed, handled, or distributed within this state, and to collect the tax from the person who first sells, uses, consumes, handles, or distributes the cigarettes. It is further the intent and purpose of this chapter that whenever any cigarettes are given for advertising or any purpose whatsoever, they shall be taxed in the same manner as if they were sold, used, consumed, handled, or distributed within this state. *Notwithstanding any other provisions contained in this chapter, the liability for the excise taxes imposed by this chapter shall be conclusively presumed to be on the retail purchaser or ultimate consumer, precollected for convenience and facility only.* When such taxes are paid by any other person, such payment shall be considered as an advance payment and shall be added to the price of the cigarettes and recovered from the ultimate consumer or user.

I.C. 6–7–1–1 (emphasis added). Eby–Brown argues that the emphasized language indicates that only those cigarettes that reach the retail purchaser or ultimate consumer are taxable because the tax "is conclusively presumed to be on the retail purchaser or ultimate consumer." Furthermore, Eby–Brown asserts that the effect of holding a distributor liable for the tax on all cigarettes it receives renders the second sentence of I.C. 6–7–1–1 meaningless, and it cannot be presumed that the legislature intended to enact a nullity. *See USAir, Inc. v. Indiana Dep't of State Revenue* (1993), Ind.Tax, 623 N.E.2d 466, 470. More specifically, Eby–Brown claims that when cigarettes have been given away, they have already been "handled" under the statute's first sentence, and the tax is therefore already due—thereby

rendering the second sentence superfluous. The court disagrees.

The words "sold, used, consumed, handled, or distributed" are significant because they embrace a wide range of activities. "Consume" is defined as "the possession for use or the use of ... cigarettes for the purpose of smoking." I.C. 6–7–1–8. "Handle" is defined as "to trade in: engage in the buying, selling, or distributing of (a commodity)." *Webster's Third New International Dictionary* 1027 (1981). "Distribute" is defined as "to divide among several or many." *Id.* at 660.[2] Consequently, by using words that encompass a broad range of activities, the legislature intended that all cigarettes be subject to the tax from the time they are brought into the state for distribution until the ultimate consumer purchases the product.

Typically, however, the ultimate consumer does not purchase cigarettes directly from a distributor. Rather, cigarettes often pass through the hands of various intermediaries—other distributors, common carriers, and retailers—before reaching the ultimate consumer. Accordingly, the Act insures that the tax is imposed once and only once during the overall distribution process. *Mathis v. Cooperative Vendors, Inc.* (1976), 170 Ind.App. 659, 671, 354 N.E.2d 269, 276. Indeed, I.C. 6–7–1–1 explains that the tax is collected from the person who *first* "sells, uses, consumes, handles or distributes" the cigarettes. In addition, I.C. 6–7–1–18 provides that a "distributor, upon the receipt of cigarettes taxed under this chapter, shall cause each individual package to have the requisite denomination and amount of stamps firmly affixed." Thus, as the *first* person to handle or distribute the cigarettes within the state, Eby–Brown has the duty to pay the tax on, and affix the cigarette stamps to, *all* cigarettes it receives from a manufacturer that are to be "sold, used, consumed, handled or distributed" within this state.[3]

■ While the court must strive to avoid an interpretation that would render any part of I.C. 6–7–1–1 meaningless, *see USAir, Inc. v. Indiana Department of State Revenue,* 623 N.E.2d at 470, it cannot view the statute's words on a selective basis out of context from the remainder of the statute. *See Miller,* 622 N.E.2d at 252. Accordingly, I.C. 6–7–1–1's second sentence cannot be read in isolation but rather in conjunction with the sentences that follow it:

> Notwithstanding any other provisions contained in this chapter, the liability for the excise taxes imposed by this chapter shall be conclusively presumed to be on the retail purchaser or ultimate consumer, precollected for convenience and facility only. When such taxes are paid by any other person, such payment shall be considered as an advance payment and shall be added to the price of the cigarettes and recovered from the ultimate consumer or user.

I.C. 6–7–1–1. Thus, these sentences explain that the tax may be passed from intermediary to intermediary to ultimate consumer. *Id.* In other words, the distributor recovers its payment of the tax from its retailer, the retailer then recovers the tax from the ultimate consumer or user. The second sentence merely explains that in instances in which a distributor gives cigarettes away (and thus there is no retailer or ultimate consumer from whom the tax can eventually be recovered), the tax is not waived.

### 2. I.C. 6–7–1–12 & I.C. 6–7–1–17

Eby–Brown contends that the language in I.C. 6–7–1–12 and I.C. 6–7–1–17 further establishes the legislature's intent to tax voluntary dispositions of cigarettes only. I.C. 6–7–1–12 provides in part:

> The following [rates of] taxes are imposed, and shall be collected and paid as provided in this chapter, *upon the sale, exchange, bartering, furnishing, giving away, or otherwise disposing of* cigarettes within the state of Indiana ...

---

**2.** The Act defines "distributor" as one who "sells, barters, exchanges, or distributes cigarettes ... to retail dealers for the purpose of resale, or who purchases cigarettes directly from a manufacturer of cigarettes." I.C. 6–7–1–6.

**3.** Eby–Brown need not, however, stamp cigarettes that are to be shipped in interstate commerce. *See* I.C. 6–7–1–18.

(Emphasis added). Likewise, I.C. 6–7–1–17 provides:

> Distributors ... shall be agents of the state of Indiana in the collection of taxes ... imposed by this chapter on cigarettes *sold, exchanged, bartered, furnished, given away, or otherwise disposed of by distributors or to retailers.*

(Emphasis added). The emphasized language, Eby–Brown insists, establishes that it must pay the tax only when its cigarettes are sold or given away to a retailer in Indiana. Again, the court disagrees.

I.C. 6–7–1–18 provides that distributors are to pay the tax on and affix stamps to cigarettes *"upon receipt."* Thus, the tax is due when the distributor receives the cigarettes. Nevertheless, the legislature created an *opportunity* for distributors to recover the tax they pay. Specifically, distributors may recover their payment of the tax from retail purchasers by including it in the purchase price. I.C. 6–7–1–1. Retailer purchasers can then recover their payment of the tax from the ultimate consumer. *Id.*

To hold that the tax is due only when cigarettes are "sold, bartered, exchanged, etc." defeats the purpose for the distributor to pay the tax and affix stamps *upon receipt*—the purpose being that because cigarettes are a major source of revenue for Indiana,[4] the state has an interest in protecting the cigarettes from "bootleggers" who seek to bypass the conventional methods of cigarette distribution and, consequently, payment of the tax.

The most effective way for the state to protect its cigarette revenue is to impose upon distributors the duty to pay the tax on *all* cigarettes at the earliest possible point, which the statute defines as receipt. This method nearly guarantees that the tax is always collected. Likewise, it creates an incentive for distributors to tighten the reigns on employee pilfering. Had the legislature intended that the tax be paid only on those cigarettes that are sold, the legislature would not have mandated that distributors affix the stamps *upon receipt* as evidence the tax has been paid. To read I.C. 6–7–1–12 and 6–7–

1–17 as Eby–Brown urges would render I.C. 6–7–1–18 ineffective.

### 3. I.C. 6–7–1–27

Next, Eby–Brown cites I.C. 6–7–1–27. That statute provides:

> Where stamps or individual packages to which stamps have been affixed have become mutilated, or otherwise unfit for use, distributors shall notify the department, and, if an investigation discloses that said stamps have not evidenced a taxable transaction, replacement stamps shall be supplied to the distributor without cost.

I.C. 6–7–1–27. Relying on the statute, Eby–Brown argues that because "the legislature allows a replacement in the event the stamps do not evidence a 'taxable transaction' ... tax liability is only to be imposed on a distributor where there is a voluntary disposition ..." *Petitioner's Brief* at 8, 9.

I.C. 6–7–1–27 provides distributors with an opportunity to obtain a credit for taxes paid that cannot not be recovered because of cigarette or cigarette stamp mutilation. The legislature could have provided a similar statute to credit distributors for the tax paid but not recovered because the cigarettes were lost, stolen, or otherwise missing. The legislature, however, did not.

### 4. I.C. 6–7–1–13.5

Eby–Brown finally points to yet another statute to support its argument. That statute, I.C. 6–7–1–13.5, provides:

> A common carrier is liable for any unpaid taxes imposed under this chapter on:
>
> > (1) cigarettes, where the carrier takes possession of the cigarettes because they were damaged or they were not accepted by the consignee, and where the carrier does not return the cigarettes to the manufacturer; and
> >
> > (2) *cigarettes that are lost or stolen in transit.*

(Emphasis added). Eby–Brown would have the court read this statute to mean that lost or stolen cigarettes *are never* taxed, except when they are lost or stolen from a common carrier. In other words, because I.C. 6–7–1–13.5 is the only statute in the Act that imposes a tax on lost or stolen cigarettes, Eby–

---

**4.** *See, generally,* I.C. 6–7–1–28.1 through 32.1.

Brown maintains that in all other instances in which cigarettes are lost or stolen, the tax is not imposed.

The court, however, does not read the statute to stand for this proposition. Rather, the emphasized language in I.C. 6–7–1–13.5 illustrates that while the tax is to be collected from the distributor, a common carrier will be held liable for the tax on the unstamped cigarettes if they are lost or stolen during transport. Consequently, the purpose of this statute is not to make common carriers primarily liable for the tax, but rather to make sure that the tax is paid on *all* cigarettes to be "sold, used, consumed, handled, or distributed" in Indiana. Thus, under the statute, unstamped cigarettes lost, stolen, or otherwise missing from the common carrier's possession are properly taxed to the common carrier. Otherwise, unstamped cigarettes lost, stolen, or missing from the distributor's possession are properly taxed to the distributor.

## CONCLUSION

For the foregoing reasons, this court holds that it is the legislature's intent to tax all cigarettes to be "sold, used, consumed, handled or distributed" within the state. Accordingly, the Department properly assessed to Eby–Brown a cigarette tax on cigarettes lost, stolen, or otherwise missing from its possession. Thus, the Department's final determination is AFFIRMED.