**UNITED STATES of America, Appellee,**

v.

**Richard A. BOGGS, Appellant.**

**No. 84–5271.**

United States Court of Appeals,
Fourth Circuit.

Argued May 7, 1985.
Decided Oct. 24, 1985.

Frances Ann McElsee (Leon T. Copeland, Federal Public Defender, Charleston, W.Va., on brief), for appellant.

James M. O'Brien, Asst. U.S. Atty. (David A. Faber, U.S. Atty., Richard S. Glaser, Asst. U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and TURK, District Judge for the Western District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Richard Boggs appeals from his convictions on one count of trafficking in contraband cigarettes in violation of 18 U.S.C. § 2342(a)[1] and on one count of conspiracy to traffic in contraband cigarettes in violation of 18 U.S.C. § 371. Finding no error, we affirm.

Richard A. Boggs, the appellant, and Anthony A. Lichnovsky, an unindicted co-conspirator and Boggs' brother-in-law, were both residents of Flushing, Michigan. On or about February 15, 1984, acting on his own and Lichnovsky's behalf, Boggs telephoned from Flint, Michigan, to J.T. Davenport & Sons, Inc., a wholesaler/stamper[2] in Sanford, North Carolina, to place an advance order for the purchase of in excess of 3,000 cartons of cigarettes. Some time prior to this telephone call, Boggs had shown Lichnovsky the federal laws prohibiting trafficking in contraband cigarettes, 18 U.S.C. §§ 2341–2346, a copy of which Boggs had in his possession. On or about February 21, 1984, Lichnovsky withdrew approximately $15,000 in cash from a bank account in Michigan for the purpose of purchasing the cigarettes that Boggs had ordered from J.T. Davenport & Sons. Thereupon, Boggs and Lichnovsky traveled south together in Boggs' car, spending the night of February 21 in Winston-Salem, North Carolina. The next morning, they rented a Jartran truck and trailer from a local gas station and then proceeded to J.T. Davenport & Sons to pick up 3,044 cartons of cigarettes, for which they paid $18,-207.80 in cash. Boggs and Lichnovsky then returned to their hotel, where they spent the night.

On the morning of February 23, 1984, Boggs left the hotel to purchase an additional 150 cartons of cigarettes from another wholesaler/stamper. He then returned to the hotel in Winston-Salem. At around noon of the same day, Boggs, driving the Jartran truck with the trailer attached, and Lichnovsky, driving Boggs' car, left their motel "traveling north for the purpose of selling the cigarettes ... in or about the Flushing, Michigan area." At the northernmost toll booth on the West Virginia Turnpike, approximately twenty miles south of Charleston, federal agents stopped both vehicles. Upon searching the Jartran truck, the agents discovered the 3,194 cartons of cigarettes, none of which bore any West Virginia cigarette tax stamps. We state, parenthetically, that Boggs does not question on appeal the validity of the search. Boggs did not have any paper in his possession showing who had or would assume responsibility for the payment of applicable cigarette taxes, either in West Virginia or Michigan or elsewhere. The agents then arrested Boggs and Lichnovsky for trafficking in contraband cigarettes.

The parties agreed to a trial to the court upon stipulated facts filed with the district court. Upon applying the applicable law to these facts, the district court found Boggs guilty of the charges contained in Counts One and Two of the indictment.

On appeal, Boggs raises three issues. First, Boggs argues that because he did not intend to sell in West Virginia the cigarettes seized on February 23, 1984, they were not subject to West Virginia cigarette taxes. Consequently, Boggs contends that the cigarettes did not come within the federal definition of contraband cigarettes contained in 18 U.S.C. § 2341, and therefore Boggs could not be convicted of trafficking or conspiring to traffic in contraband cigarettes. As his second point which is closely related to the first, Boggs argues that his indictment was defective in that it failed to state each element of the crimes charged. He also argues that the evidence does not support the verdict.

---

1. 18 U.S.C. § 2342(a). It shall be unlawful for any person to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes.

2. According to the stipulated facts filed in this case, a "wholesaler/stamper" is a wholesale cigarette dealer whom a state has licensed or otherwise empowered to purchase and apply that state's cigarette tax stamps to cigarettes.

Boggs' principal contention on appeal is that he could not be convicted of trafficking or conspiring to traffic in contraband cigarettes because the cigarettes that he was transporting across West Virginia were not subject to West Virginia cigarette taxes, and therefore did not come within the federal definition of "contraband cigarettes" for purposes of 18 U.S.C. § 2342(a). Section 2341 of Title 18 of the United States Code defines "contraband cigarettes" as

> a quantity in excess of 60,000 cigarettes which bear no evidence of the payment of applicable State cigarette taxes in the State where such cigarettes are found, if such State requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, . . . .
>
> 18 U.S.C. § 2341(2).[3]

Boggs does not dispute the absence of West Virginia tax stamps on the cigarettes seized from him or that the quantity seized exceeded 60,000 cigarettes. Rather, he contends that the use of the term "applicable State cigarette taxes" in the federal definition of "contraband cigarettes" requires that before a court may find a defendant guilty of trafficking in contraband cigarettes, it must first find that the defendant had a legal duty to pay cigarette taxes in the state in which the cigarettes were found, in this case, West Virginia. In this case, Boggs argued to the district court, ". . . until there is a sale [in West Virginia] there is no violation."

The argument goes that such a preliminary finding requires an intent to sell the cigarettes in question in the State in which they are found, here West Virginia. Absent such intent, it continues, the State would not have authority to impose an excise tax on the cigarettes either under state law or under the commerce clause.

We think, however, that the West Virginia statutes disclose that West Virginia does have the authority to apply its Cigarette Tax Act, W.Va.Code § 11–17–1 et seq., to people such as Boggs *unless* the cigarettes they possess are being legitimately transported in commerce, in which event exception is made.

West Virginia Code § 11–17–19(b)(6) provides that:

> "If any person, firm or corporation, who is not a wholesaler of tobacco products, . . . shall have in his possession within the state more than 20 packages of cigarettes not bearing cigarette tax paid indicia of this State . . . such possession shall be presumed to be for the purpose of evading the payment of taxes imposed or due thereon. . . ."

A fair reading of this statute can only be that one having possession of more than 20 packages of unstamped cigarettes is presumed to have them available and thus intended for sale in West Virginia and subject to the West Virginia excise tax under West Virginia Code § 11–17–3.[4] The defendant argues, however, that since it has been stipulated that he possessed the cigarettes "for the purpose of" selling them in or about the Flushing, Michigan area, he would not be responsible for having the West Virginia tax stamps thereupon. This

---

**3.** Section 2341(2) also contains a series of excepted categories of individuals who may possess otherwise contraband cigarettes without the cigarettes coming within the statutory definition. *See* 18 U.S.C. § 2341(2)(A)–(D) (1982) (exempting unstamped cigarettes in possession of warehousemen, common carriers, and federal or state officials, among others, from definition of "contraband cigarettes"). Because the parties stipulated that Boggs did not come within any of the excepted categories listed in 18 U.S.C. § 2341(2)(A)–(D), these exceptions are not discussed further in this opinion.

**4.** It must be remembered that Boggs had in his possession a quantity of unstamped cigarettes in

excess of 60,000. He was stopped 20 miles south of Charleston, at the last toll gate on the West Virginia Turnpike. Although his trip north was "for the purpose of" selling the cigarettes in and around Flushing, Michigan, he could have stopped at any place in West Virginia and sold the cigarettes had he so desired. Thus, the district court found that the "cigarettes were available for sale within the state of West Virginia." The record does not disclose whether or not the district court relied upon § 11–17–19(b)(6) of the Cigarette Tax Act; certainly it did not have to.

argument would be more plausible were it not for § 11–17–20 of the West Virginia Code, the first part of the catchline of which is "transportation of unstamped cigarettes." That section provides in pertinent part that:

"Every person who shall transport cigarettes not stamped as required by this article upon the public highways ... of this State shall have in his actual possession invoices or delivery tickets for such cigarettes which shall show the true name and complete and exact address of the consignor or seller, the true name and complete and exact address of the consignee or purchaser ... and the true name and complete and exact address of the person who has or shall assume payment of the West Virginia state tax, or the tax, if any, of the State at the point of ultimate destination...."

Inasmuch as Boggs' defense is that he was transporting the cigarettes through West Virginia "for the purpose of" selling them in Michigan, he was required to have in his possession invoices or delivery tickets showing the true name and complete and exact address of the person who had paid or assumed payment of the Michigan state tax. This he has stipulated that he did not have. Thus, West Virginia would have been perfectly justified in imposing upon Boggs its excise tax on account of his failure to comply with this rather simple and unburdensome requirement of West Virginia law or to subject him to criminal penalties for failure to comply therewith.

■ We do not think that merely requiring Boggs to have in his possession papers showing the name and address of the person who had paid the Michigan tax or had assumed its payment is an undue burden on interstate commerce within the meaning of the Constitution. See *Arkansas Elec. Cooperative Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 393–95, 103 S.Ct. 1905, 1917–18, 76 L.Ed.2d 1 (1983) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137,

142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970)). This is especially true in this case where Congress, which has specific authority to regulate commerce between the States under the Constitution, has chosen to regulate the cigarette bootlegging traffic by regulating the very interstate commerce which the States may not, by providing, in its definition of contraband, for the States' application of their own tax laws. If a State's application of her own tax laws, as here, is adopted by Congress as Congress' definition of contraband, it cannot be said with reason that a State's exemption (that of possessing papers showing the name and address of the taxpayer in another State) is an undue burden on commerce. Neither when Congress recognized the application of a State's own tax laws as a predicate for a federal criminal penalty, as here, may there be such undue burden by the very application mentioned by Congress. See *Western & Southern Life Ins. Co. v. State Board of Equalization*, 451 U.S. 648, 652, 101 S.Ct. 2070, 2074, 68 L.Ed.2d 514 (1980): "Our decision does not, however, limit the authority of *Congress* to regulate commerce among the several States as it sees fit. In the exercise of this plenary authority, Congress may 'confe[r] upon the States an ability to restrict the flow of interstate commerce they would not otherwise enjoy.'"

■ In sum, we think the West Virginia statute either requiring cigarettes such as these to bear state tax stamps or to hold the possessor of such cigarettes criminally [5] responsible for failure to see that the stamps are affixed is within the meaning of the phrase "applicable State cigarette taxes" in 18 U.S.C. § 2341(2).

■ While it is true that the defendant does not directly draw into question the validity of the West Virginia statutes as measured against the commerce clause of the Constitution, he has argued that a construction of West Virginia law subjecting

---

**5.** *See* W.Va.Code §§ 11–17–2(9) and 11–17–19(b)(4), for example, for one in Boggs apparent position.

cigarettes such as these to the provisions of the West Virginia Cigarette Tax Act would be an unconstitutional application of the West Virginia statute. As the discussion above indicates, we do not agree.[6]

An alternate and equally plausible construction of the federal statute construing the language "applicable state cigarette taxes" is to construe the word "applicable" as meaning "applicable" if the cigarettes were sold in the State where they were found. We need not rest our decision on this ground, however.

As to appellant's other points on appeal, the indictment in question was drawn within the terms of the statute, and we think it was sufficient. The defendant was given notice of that which he was required to defend against, and a claim of former jeopardy would be successful against another prosecution for the same act. We are further of opinion that the evidence supports the verdict.

The judgment of the district court is AFFIRMED.

TURK, District Judge, dissenting:

I recognize the strong Congressional intent to eradicate the illegal sale of cigarettes in derogation of state tax laws. I

further recognize that the defendant Boggs clearly intended to avoid the payment of any applicable state taxes in Michigan. I do not believe, however, that the law of the state of West Virginia, as incorporated by the federal statute, permits a conviction in this case. Therefore, I respectfully dissent.

To meet the federal statutory definition of contraband, the cigarettes in question must fail to bear evidence of the *payment* of the *applicable* state tax of West Virginia. 18 U.S.C. § 2341(2). The West Virginia cigarette tax statute, West Virginia Code § 11–17–3, levies an excise tax on the *sale* of cigarettes in the state. The language is very clear and there is no reason to give it other than its plain meaning. When cigarettes are to be sold in West Virginia, they are subject to the excise tax. When the required tax has been paid, a tax stamp is issued as evidence of that payment. No stamp will be issued unless the applicable tax is paid, and no tax will be applicable unless cigarettes are to be sold within the state.

The present case was tried on a stipulation of fact, agreed upon by the parties and accepted by the court, that the cigarettes were to be sold in Michigan, not in West Virginia. Therefore, there were no ciga-

---

**6.** Along the same line, appellant contends that application of the presumption in W.Va.Code § 11–17–19(b)(6) in this case is unconstitutional under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), because the presumption shifts the burden of proof to the defendant on one element of the prosecution's case, namely, establishing that West Virginia cigarette tax laws required tax stamps on the cigarettes in question. In *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Court stated that the ultimate test of any presumption's constitutionality is whether the presumption undermines the factfinder's responsibility to find the ultimate facts beyond a reasonable doubt based on the facts adduced at trial. *Id.* at 156, 99 S.Ct. at 2224. This determination requires a court to analyze mandatory and permissive presumptions differently. *See id.* at 157, 99 S.Ct. at 2224; McCORMICK ON EVIDENCE § 348, at 997 (3d. ed. 1984). The mandatory presumption which removes fact finding from a jury or court is invalid, while a permissive presumption may be valid. It is not clear from the record, however,

whether or not the district court applied the presumption in arriving at its conclusion. We presume that when the record on appeal does not disclose which of two interpretations of law the district court applied, one of which was violative of the Constitution, the other of which was not, that the district court intended its interpretation to comply with the requirements of the Constitution. *See Mackey v. Stanton,* 586 F.2d 1126, 1130 (7th Cir.1978), *cert. denied,* 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979); *see also McDonnell v. American Leduc Petroleums, Ltd.,* 456 F.2d 1170, 1188 (2d Cir.1972) (Hays, J., concurring and dissenting in part) (if record on appeal does not disclose what rule of law district court applied, appellate court should presume that district court correctly applied applicable law) (citing cases). Thus, we conclude that if the district judge considered the presumption at all in this case he considered it as a permissive and thus valid presumption. We hasten to add that in the preparation of this opinion we have never considered the presumption in any other than its permissive and valid sense.

rettes for sale in West Virginia and no West Virginia tax applicable to the cigarettes in the possession of the defendant. As there was no applicable West Virginia tax, there was no West Virginia tax stamp required and the cigarettes could not meet the statutory definition of federal contraband.

Congress, when enacting 18 U.S.C. § 2342(a), recognized that there were situations where unstamped cigarettes would not be federal contraband. Specifically mentioned were states, such as Michigan, which do not require tax stamps on packages of cigarettes. *See* 1978 Cong. & Admin.News, 5532. Although West Virginia provides for tax stamps as evidence of payment of the applicable cigarette tax, it does not require tax stamps on packages of cigarettes not for sale in the state. Therefore, the same rationale would preclude a finding that the cigarettes in the possession of Boggs were federal contraband.

The majority relies heavily on two West Virginia statutes. The first, West Virginia Code § 11–17–19(b)(6), creates a presumption that anyone with a certain number of unstamped packages of cigarettes is presumed to be attempting to avoid paying the taxes due thereon. As conceded by the majority, any presumption in a criminal case must be merely permissive in order to be valid. Any such presumption stands only until destroyed by the facts. The facts in this case, as stipulated by the parties and accepted by the trial court, are that the cigarettes were to be sold in Michigan. Therefore, the statutory presumption is destroyed and can no longer be relied upon by the prosecution or by the appellate court.

The second statute, West Virginia Code § 11–17–20, makes it a misdemeanor to transport through the state certain quantities of unstamped cigarettes without proper documentation, and any cigarettes so transported are state contraband for purposes of this statute. It is clear that the defendant violated this statute and that he could be charged with having committed that state misdemeanor. It is quite a different thing, however, to equate transporting unstamped cigarettes through the state with offering the cigarettes for sale in the state. In fact, I believe this statute makes it undeniably clear that the West Virginia legislature recognized that cigarettes could be transported through the state and not have the West Virginia cigarette tax applicable to them. Therefore, I fail to see how the majority can find any support for its position in this statute.

I feel I must comment briefly on footnote 4 of the majority opinion, which discusses how the defendant "could have stopped at any place in West Virginia and sold the cigarettes had he so desired." I am concerned to find that the majority attempts to uphold a conviction by surmising what could have happened had the defendant wanted to do something other than what has been stipulated by the parties and accepted by the trier of fact.

Accordingly, in dissent, I express my conclusion that the judgment of conviction should be reversed.