In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 13-2368

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

HAITHAM MOHAMED,

*Defendant-Appellant*.

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-CR-00097-SEB-MJD — **Sarah Evans Barker**, *Judge*.

_____

ARGUED APRIL 15, 2014 — DECIDED JULY 22, 2014

_____

Before RIPPLE and WILLIAMS, *Circuit Judges*, and ST. EVE,
*District Judge*.\*

ST. EVE, *District Judge*. On March 26, 2013, a jury convict-
ed Haitham Mohamed of one count of knowingly transport-
ing and possessing contraband cigarettes in violation of
18 U.S.C. § 2342(a). Mr. Mohamed appeals his conviction,

_____

\* The Honorable Amy J. St. Eve, District Judge for the United States Dis-
trict Court, Northern District of Illinois, sitting by designation.

claiming that the district court erred in denying his motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. For the reasons set forth in the following opinion, we agree and reverse the district court's decision.

## BACKGROUND

On the evening of June 6, 2012, Officer Christopher Helmer, a patrolman with the Speedway Police Department, pulled over Mr. Mohamed for running a red light in Speedway, Indiana near Indianapolis. Upon searching Mr. Mohamed's van,[1] Officer Helmer found 1,170 packs of Newport-brand cigarettes (totaling 23,400 cigarettes) not bearing Indiana tax stamps. A federal grand jury indicted Mr. Mohamed with one count of knowingly transporting and possessing contraband cigarettes in violation of section 2342(a) of the Contraband Cigarette Trafficking Act ("CCTA"), which makes it unlawful for "any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." *See* 18 U.S.C. § 2342(a). The CCTA defines "contraband cigarettes" with reference to state law:

> "[C]ontraband cigarettes" means a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person other than [certain exceptions].

---

[1] Mr. Mohamed does not challenge the constitutionality of the search.

18 U.S.C. § 2341(2). Mr. Mohamed pleaded not guilty to the offense, and the case proceeded to trial.

The government called two witnesses at trial, Special Agent Daniel Neie of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and Officer Helmer of the Speedway Police Department. Special Agent Neie explained to the jury how cigarette traffickers typically operate.[2] Disparities in state cigarette tax rates, which range from $0.17 per pack in Missouri to $4.35 per pack in New York, allow cigarette traffickers to profit by buying cigarettes in low-tax states and reselling them in high-tax states without paying the latter state's taxes. As a result of the tax disparity, the cigarette trafficker can sell the cigarettes below the market price while still earning a profit; the greater the tax disparity, the greater the trafficker's potential profits. The state in which the cigarette trafficker sells the cigarettes, meanwhile, loses out on the tax revenue it would have received from a legal sale. Special Agent Neie testified that because retailers often limit the amount of cigarettes a customer can buy at one time to ensure that they will have sufficient inventory for other customers, traffickers often must travel from retailer to retailer until they accumulate the total number of cigarettes they want. Special Agent Neie further testified based on his training and experience that Marlboros and Newports are the most frequently trafficked brands of cigarettes.

---

[2] *See generally* U.S. DEP'T OF JUSTICE, OFFICE OF THE INSPECTOR GENERAL, I-2009-005, THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES' EFFORTS TO PREVENT THE DIVERSION OF TOBACCO i-ii (2009), *available at* http://www.justice.gov/oig/reports/ATF/e0905.pdf (last visited July 22, 2014).

With respect to Mr. Mohamed in particular, Special Agent Neie testified that the cigarette tax rate in Kentucky, where Mr. Mohamed had bought the cigarettes at issue, is $0.60 per pack, whereas the cigarette tax rate in Indiana, where the cigarettes were found, is $0.995 per pack. Thus, if Mr. Mohamed sold all 1,170 packs in his possession in Indiana, he stood to make a profit of up to $462.15. Special Agent Neie acknowledged that many states—including New York ($4.35 per pack) and Washington ($3.25 per pack)—had higher cigarette taxes than Indiana, and Mr. Mohamed would have increased his potential profit by selling the cigarettes at issue in those states rather than Indiana. Finally, Special Agent Neie confirmed that none of the cartons of cigarettes found in Mr. Mohamed's van was missing cigarettes; all 23,400 cigarettes were accounted for and remained in their original packs.

Next, Officer Helmer testified about his June 6, 2012 traffic stop involving Mr. Mohamed. Officer Helmer testified that he pulled over Mr. Mohamed for running a red light at approximately 6:57 p.m. Mr. Mohamed, who lives in Indianapolis, informed Officer Helmer that he was returning home after visiting friends in Kentucky. When Officer Helmer searched Mr. Mohamed's van, he found 117 cartons (with ten packs per carton) of Newport cigarettes bearing Kentucky tax stamps. None of the cigarette packs had Indiana tax stamps evidencing the payment of Indiana's cigarette tax. Officer Helmer also found in Mr. Mohamed's van receipts showing purchases of Newport cigarettes from several Kentucky gas stations earlier that day and a black trash bag containing over $15,000 in cash. When Officer Helmer asked Mr. Mohamed how much he makes selling cigarettes, Mr. Mohamed answered "not much."

The parties stipulated at trial that Mr. Mohamed did not fall within one of the exceptions contained in the CCTA's definition of "contraband cigarettes." *See* 18 U.S.C. § 2341(2)(A)-(D). Specifically, the parties stipulated that the State of Indiana and the United States did not have any records indicating that, as of June 6, 2012, Mr. Mohamed held a permit as a manufacturer of tobacco products, an export warehouse proprietor, or a person operating a customs bonded warehouse; nor did they have records indicating that Mr. Mohamed ever served as an officer, employee, or other agent of the State of Indiana or the United States. The parties also stipulated that the State of Indiana had no records indicating that Mr. Mohamed was engaged in business as a common carrier or was licensed or otherwise authorized to account for and pay Indiana cigarette taxes as of June 6, 2012.

At the close of the government's evidence, Mr. Mohamed's counsel moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court denied the Rule 29 motion, finding that the government had presented sufficient evidence to allow a reasonable jury to conclude that Mr. Mohamed was guilty as charged. Mr. Mohamed elected not to call any witnesses or present any evidence in his defense, as is his right.

During closing arguments, defense counsel admitted that Mr. Mohamed had more than 10,000 cigarettes not bearing Indiana tax stamps in his possession but argued that the government failed to prove that Indiana law required the cigarettes to bear Indiana tax stamps in order to make the cigarettes "contraband" under the CCTA. (R. 25 at 9-14.) Defense counsel asserted that the government presented no ev-

idence that the cigarettes had been "sold, used, consumed, handled, or distributed" within Indiana, and, therefore, the government failed to prove that Indiana's cigarette tax applied to the cigarettes at the time of seizure. (*Id.* at 10–13.) Moreover, defense counsel asserted, it made no economic sense for Mr. Mohamed to sell the cigarettes in Indiana, where he stood to gain only $462.15, minus the cost of gas, travel, and food. (*Id.* at 13.) On rebuttal, the government contended that it had proven everything necessary to convict Mr. Mohamed of the offense:

> When Mr. Mohamed was arrested in Indiana, he stated in Indiana that he didn't make much money buying these cigarettes. When he was arrested in Indiana, he had a bag full of cash in his car, in Indiana. And he had twice the legal limit of cigarettes from out of state. You can look at these facts and you can infer that everything that needs to be proven for this offense to be complete has, in fact, been proven, and that when Officer Helmer pulled Haitham Mohamed over, Haitham Mohamed was already committing the crime of knowingly transporting or possessing those cigarettes, and I ask you to find him guilty.

(*Id.* at 16.)

Following closing arguments, the district court instructed the jury on what constitutes "contraband cigarettes" under the CCTA and on the application of Indiana's cigarette tax laws. The jury instruction on the definition of "contraband cigarettes" mirrored the CCTA's definition of the term. *See* 18 U.S.C. § 2341(2). The instruction regarding the applicability of Indiana's cigarette tax stated as follows:

Indiana law requires a stamp to be placed on packages or other containers of cigarettes to prove that applicable taxes have been paid. Indiana's cigarette taxes are levied on all cigarettes sold, used, consumed, handled, or distributed within the State of Indiana.

With respect to this law, the following definitions apply:

- to "sell" means the transfer of property for a price;
- to "use" means to bring or put into service or action;
- to "consume" means to possess for use or to use a cigarette or cigarettes for the purpose of smoking;
- to "handle" means to engage in selling, buying, or distributing; and
- to "distribute" means to divide among several or many.

(Jury Instruction No. 10.)[3]

The jury appears to have struggled in applying these instructions. During deliberations, the jury submitted three questions to the district court. First, the jury asked whether "more than 10,000 cigarettes being transported into Indiana from another state without paying [Indiana's cigarette] tax [is] enough to be called contraband?" Second, the jury asked, "Is the question at hand just that [Mr. Mohamed] had 10,000+ [cigarettes] and crossed state lines, or do we need to

---

[3] Neither party objected to these instructions at trial or argues on appeal that the instructions were erroneous.

consider intent of what he planned to do with them once he crossed the state line? Sell, distribute, etc.?" Third, the jury asked, "In the definition of 'handled,' is 'buying' applicable even if [the cigarettes] are bought in Kentucky? Can we see the entire copy of title 18 U.S. Code Section 2342(a)[?]" The district court judge responded to the jury's questions in writing, informing the jurors that she could not provide the information they had requested. The judge instructed the jurors to review the jury instructions and the evidence at trial and discuss the issues they had raised with the court in their continued deliberations.

The jury ultimately found Mr. Mohamed guilty of knowingly transporting or possessing contraband cigarettes in violation of the CCTA. After the jury rendered its verdict, defense counsel renewed Mr. Mohamed's Rule 29 motion for judgment of acquittal, which the district court again denied.

## STANDARD OF REVIEW

We review *de novo* the district court's denial of Mr. Mohamed's Rule 29 motion for acquittal. *See United States v. Foley*, 740 F.3d 1079, 1082 (7th Cir. 2014); *United States v. Seidling*, 737 F.3d 1155, 1159 (7th Cir. 2013). Under Rule 29, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In considering challenges to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and then ask whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *Foley*, 740 F.3d at 1082–83 (internal quotation marks omitted) (quoting *United States v.*

*Boender*, 649 F.3d 650, 654 (7th Cir. 2011)). "[W]e 'defer to the credibility determination of the jury[] and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.'" *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014) (second alteration in original) (quoting *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)).

## ANALYSIS

### I.    The Contraband Cigarette Trafficking Act

Congress enacted the CCTA to enable federal enforcement agencies to assist states in curtailing interstate cigarette trafficking, which drains billions of dollars in tax revenues from state and local governments each year and often serves as a source of illicit financing for organized crime and terrorist organizations. *See* S. REP. 95-962 at 3–9 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5518; H.R. CONF. REP. 95-1778 at 7–9 (1978), *reprinted in* U.S.C.C.A.N. 5535. Under the CCTA, it is unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase "contraband cigarettes." *See* 18 U.S.C. § 2342(a). The CCTA defines "contraband cigarettes" as

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in

the possession of any person other than [certain exceptions].

18 U.S.C. § 2341(2). Accordingly, to convict Mr. Mohamed of cigarette trafficking, the government needed to prove beyond a reasonable doubt that (1) Mr. Mohamed knowingly shipped, transported, received, possessed, sold, distributed, or purchased (2) more than 10,000 cigarettes (3) not bearing Indiana cigarette tax stamps (4) under circumstances in which Indiana law required the cigarettes to bear such stamps, and (5) Mr. Mohamed is not an excepted person under 18 U.S.C. § 2341(2)(A)-(D). *See* 18 U.S.C. §§ 2341-42; *see also City of New York v. Chavez,* 944 F. Supp. 2d 260, 264 (S.D.N.Y. 2013).

Mr. Mohamed does not challenge the sufficiency of the evidence with respect to the first, second, third, and fifth elements of the offense. The only issue before us is whether the government presented sufficient evidence to allow a rational trier of fact to find beyond a reasonable doubt that Indiana law required the cigarettes discovered in Mr. Mohamed's van to bear Indiana cigarette tax stamps. To resolve this issue, we turn to Indiana state law.

## II.    Indiana's Cigarette Tax Act

In construing Indiana's Cigarette Tax Act, we must interpret the statute as we think the Indiana Supreme Court would interpret it. *See Laborers Local 236, AFL-CIO v. Walker*, 749 F.3d 628, 634 (7th Cir. 2014) (citing *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998)). "In Indiana, the lodestar of statutory interpretation is legislative intent, and the plain language of the statute is the 'best evidence of … [that] intent.'" *Estate of Moreland v. Diet-*

*er*, 576 F.3d 691, 695 (7th Cir. 2009) (alterations in original) (quoting *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007)); *see also Indiana Dep't of Revenue v. United Parcel Serv., Inc.*, 969 N.E.2d 596, 600 (Ind. 2012); *Indiana Dep't of State Revenue, Inheritance Tax Div. v. Estate of Parker*, 924 N.E.2d 230, 233 (Ind. Tax Ct. 2010). Unless a statute indicates otherwise, we must give the words in the statute their plain and ordinary meaning, and we must examine the statute as a whole, "avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Estate of Moreland*, 576 F.3d at 695 (quoting *Cubel*, 876 N.E.2d at 1120); *see also Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013). When the language of a statute is clear, we must enforce the statute as written, and we "ha[ve] no power to construe the statute for the purpose of limiting or extending its operation." *See Estate of Parker*, 924 N.E.2d at 233 (quoting *In re Estate of Wilson*, 822 N.E.2d 292, 295 (Ind. Tax Ct. 2005)); *see also Scherr*, 703 F.3d at 1077 ("When the language of a statute is plain, we enforce it according to its terms.").

Indiana's Cigarette Tax Act levies a tax on "all cigarettes sold, used, consumed, handled, or distributed" within the state. *See* Ind. Code § 6-7-1-1. For purposes of the Cigarette Tax Act, "consume" means to possess for use or use cigarettes for the purpose of smoking, *see* Ind. Code § 6-7-1-8; "handle" means "to trade in: engage in the buying, selling, or distributing of (a commodity)," *Indiana Eby-Brown Co. v. Indiana Dep't of State Revenue*, 648 N.E.2d 401, 404 (Ind. Tax Ct. 1995) (quoting *Webster's Third New Int'l Dictionary* 1027 (1981)); and "distribute" means "to divide among several or many." *Id.* (quoting *Webster's Third New Int'l Dictionary* at 660). All packages of cigarettes subject to Indiana's cigarette

tax must bear Indiana tax stamps evidencing payment of the tax. *See* Ind. Code § 6-7-1-14.

Mr. Mohamed argues that under the plain language of the Cigarette Tax Act, the cigarettes at issue were not subject to Indiana's cigarette tax because, at the time of his arrest, the cigarettes had not yet been sold, used, consumed, handled, or distributed within Indiana. His argument raises two questions regarding Indiana's cigarette taxation scheme: (1) when Indiana's cigarette tax becomes due; and (2) whether Indiana's cigarette tax applies to cigarettes possessed in Indiana but bought and intended for sale outside the state.

### A.       The Timing of Indiana's Cigarette Tax

Mr. Mohamed argues that Indiana's cigarette tax does not apply until disposal of the cigarettes. We disagree. Indiana technically imposes its cigarette tax on the retail purchaser or ultimate consumer "upon the sale, exchange, bartering, furnishing, giving away, or otherwise disposing of cigarettes  within  the  state  of  Indiana." *See* Ind. Code § 6-7-1-12. The State, however, pre-collects the tax for convenience and facility from "the person who first sells, uses, consumes, handles,  or  distributes  the  cigarettes." *See id.* § 6-7-1-1. The Cigarette Tax Act requires cigarette distributors and retailers,[4] which act as agents of the State in collect-

---

[4] Under the Cigarette Tax Act, "distributor" includes

> every person who sells, barters, exchanges, or distributes ciga-
> rettes in the state of Indiana to retail dealers for the purpose of
> resale, or who purchases cigarettes directly from a manufacturer
> of cigarettes, or who purchases for resale cigarettes directly from
> a manufacturer of cigarettes, or from a wholesaler, jobber, or dis-
> tributor outside of the state of Indiana who is not a distributor

ing the cigarette tax, *see id.* § 6-7-1-17(a), to prepay the tax and affix the required amount of tax stamps "upon receipt" of any unstamped cigarettes subject to the tax. *See id.* § 6-7-1-18. Distributors and retailers can then pass along the tax to retail purchasers or ultimate consumers by adding the tax to the price of the cigarettes.[5] *See id.* § 6-7-1-1. Accordingly, under the plain language of the Cigarette Tax Act, read fairly and as a whole, if Indiana's cigarette tax applies at all, it applies upon receipt of the cigarettes, even though the State technically does not levy the tax until disposal. *See id.* § 6-7-1-18.

This construction is consistent with the Cigarette Tax Act's "intent and purpose" to pre-collect the cigarette tax from the person who first sells, uses, consumes, handles, or distributes the cigarettes. *See id.* § 6-7-1-1. It is also consistent with the Indiana Tax Court's interpretation of the Cigarette Tax Act and, as the Tax Court recognized, the State's interest

---

holding a registration certificate issued under [the Cigarette Tax Act].

*Id.* § 6-7-1-6. "Retailer" means "every person, other than a distributor, who purchases, sells, offers for sale, or distributes cigarettes, to consumers or to any person for any purpose other than resale, irrespective of quantity or amount, or the number of sales." *Id.* § 6-7-1-7. If Mr. Mohamed intended to sell the cigarettes in his possession in Indiana, he would qualify as either a distributer or retailer under the Cigarette Tax Act.

[5] Although the Cigarette Tax Act does not specify when persons other than distributors and retailers must pay the cigarette tax, this is not surprising given that Indiana requires all cigarettes sold within the state to be sold through cigarette distributors or retailers. *See id.* § 24-3-6-11(a)-(f).

in protecting itself from revenue losses due to cigarette traf-
ficking:

> To hold that the [cigarette] tax is due only when ciga-
> rettes are "sold, bartered, exchanged, etc." defeats the
> purpose for the distributor to pay the tax and affix
> stamps *upon receipt*—the purpose being that because
> cigarettes are a major source of revenue for Indiana,
> the state has an interest in protecting the cigarettes
> from "bootleggers" who seek to bypass the conven-
> tional methods of cigarette distribution and, conse-
> quently, payment of the tax.

> The most effective way for the state to protect its ciga-
> rette revenue is to impose upon distributors the duty
> to pay the tax on *all* cigarettes at the earliest possible
> point, which the statute defines as receipt. This meth-
> od nearly guarantees that the tax is always collected
> … . Had the legislature intended that the tax be paid
> only on those cigarettes that are sold, the legislature
> would not have mandated that distributors affix the
> stamps *upon receipt* as evidence the tax has been paid.

*Indiana Eby-Brown Co.*, 648 N.E.2d at 405 (footnote omitted;
emphasis in original). We therefore reject Mr. Mohamed's
argument that Indiana's cigarette tax does not apply until
the cigarettes are sold, used, consumed, handled, or distrib-
uted as contrary to Indiana law. We instead find that Indi-
ana's cigarette tax applies *upon receipt* of cigarettes subject to
the tax.

### B.    The Scope of Indiana's Cigarette Tax

Next, we consider the scope of Indiana's cigarette tax. On
its face, the Cigarette Tax Act applies only to cigarettes sold,

used, consumed, handled, or distributed *within Indiana*. *See* Ind. Code § 6-7-1-1 ("It is the intent and purpose of this chapter to levy a tax on all cigarettes sold, used, consumed, handled or distributed *within this state* … ." (emphasis added)); *id.* § 6-7-1-12(a) (imposing Indiana's cigarette tax only "upon the sale, exchange, bartering, furnishing, giving away, or otherwise disposing of cigarettes *within the state of Indiana*" (emphasis added)). The Cigarette Tax Act does not tax cigarettes possessed in Indiana merely for the purpose of interstate commerce; nor does it require cigarettes passing through the state in interstate commerce to bear Indiana tax stamps. *See id.* § 6-7-1-18 ("Any distributor engaged in interstate business[] shall be permitted to set aside such part of his stock as may be necessary for the conduct of such interstate business without affixing the stamps required by this chapter."); *see also* 45 Ind. Admin. Code § 8.1-1-28 ("Distributors need not affix tax stamps to the individual packages of cigarettes that are sold and shipped outside the State."); *Indiana Eby-Brown Co.*, 648 N.E.2d at 404 n.3 ("Eby-Brown need not … stamp cigarettes that are to be shipped in interstate commerce.").

Because Indiana does not tax all cigarettes possessed within the state, the government needed to prove more than Mr. Mohamed's possession of unstamped cigarettes in Indiana to convict him of violating the CCTA. Rather, the government needed to prove that Mr. Mohamed possessed the cigarettes *for the purpose of* selling, using, consuming, handling, or distributing them within Indiana in order to establish that they were subject to Indiana's cigarette tax. *See* Ind. Code §§ 6-7-1-1, 6-7-1-12(a); 18 U.S.C. § 2341(2).

The government argues that "[t]he larger context of Indiana's cigarette taxation statutes" establishes that the cigarettes found in Mr. Mohamed's van were subject to Indiana's cigarette tax at the time of his arrest. (*See* Appellee Br. at 9-11.) The government cites two provisions of the Cigarette Tax Act in support of this argument. First, under Indiana Code section 6-7-1-19.5, all persons transporting unstamped cigarettes over Indiana highways, except licensed distributors, common carriers, and state or federal employees performing their official duties, must carry invoices or delivery tickets stating the quantity and brand of the cigarettes and the names and addresses of the seller, purchaser, and the person ultimately liable for the state's cigarette tax. *See* Ind. Code § 6-7-1-19.5. Transporting unstamped cigarettes in Indiana without proper documentation constitutes a misdemeanor under Indiana law. *See id.* § 6-7-1-23. Second, under Indiana Code section 6-7-1-24, the possession of more than 1,500 cigarettes in packages not bearing Indiana tax stamps by any person other than a distributor, common carrier, or state or federal employee constitutes "*prima facie* evidence that the cigarettes are possessed for the purpose of sale." *Id.* § 6-7-1-24(d).

Mr. Mohamed acknowledges on appeal that he was transporting the cigarettes at issue over Indiana highways without proper documentation in violation of Indiana Code section 6-7-1-19.5, and, as a result, the State could have charged him with a misdemeanor. (*See* Appellee Reply Br. at 3.) He argues, however, that this misdemeanor violation does not amount to a violation of the CCTA. Additionally, Mr. Mohamed argues that even if his possession of more than 1,500 cigarettes without Indiana tax stamps creates a presumption that he possessed the cigarettes for the purpose

of sale, the presumption "stands only until it is destroyed by the facts." (*Id.* at 4.) According to Mr. Mohamed, the evidence at trial and the government's position during sentencing—*i.e.,* that the district court should calculate the amount of loss using New York's cigarette tax rate, rather than Indiana's tax rate—demonstrate that Mr. Mohamed intended to sell the cigarettes outside Indiana, thus destroying any presumption that he intended to sell them within the state. (*Id.*)

The strongest support for the government's position is *United States v. Boggs*, 775 F.2d 582 (4th Cir. 1985). In *Boggs*, federal agents arrested the defendant in West Virginia carrying over 60,000 cigarettes not bearing West Virginia tax stamps. The parties stipulated that the defendant had purchased the cigarettes in North Carolina and was transporting them through West Virginia to resell them in Michigan. After a bench trial based on stipulated facts, the district court found the defendant guilty of trafficking and conspiring to traffic contraband cigarettes in violation of the CCTA. *See id.* at 583.

On appeal, the defendant argued that because he had purchased the cigarettes outside the state and intended to sell them outside the state, West Virginia's cigarette tax did not apply, and, thus, the cigarettes did not qualify as contraband under the CCTA even though they lacked West Virginia tax stamps. The Fourth Circuit disagreed. A majority of the panel determined that West Virginia's tax statutes gave the State authority to apply its cigarette tax to "people such as [the defendant] *unless* the cigarettes they possess are being legitimately transported in commerce, in which event exception is made." *See id.* at 584.

The majority relied on two provisions of West Virginia's tax statutes in drawing this conclusion. First, the court found that the defendant's possession of more than twenty packages of cigarettes not bearing West Virginia tax stamps created a presumption under West Virginia law that the defendant possessed the cigarettes "for the purpose of evading the payment of taxes imposed or due thereon." *See id.* (quoting W. Va. Code § 11-17-19(b)(6)). Second, the court determined that the defendant's intent to sell the cigarettes in Michigan rather than West Virginia did not rebut the presumption that he possessed the cigarettes for the purpose of evading West Virginia's cigarette tax because the defendant had not complied with the State's requirements regarding the transportation of unstamped cigarettes. *See id.* at 585 (quoting W. Va. Code § 11-17-20). Like Indiana, West Virginia requires persons transporting unstamped cigarettes across the state to have in their possession invoices or delivery tickets bearing certain information about the buyer and seller of the cigarettes. *See* W. Va. Code § 11-17-20. The defendant stipulated at trial that he did not have the required invoices or delivery tickets for the cigarettes in his possession. *See Boggs*, 775 F.2d at 585. As a result, the majority held that West Virginia "would have been perfectly justified in imposing upon [the defendant] its excise tax on account of his failure to comply with this rather simple and unburdensome requirement of West Virginia law or to subject [the defendant] to criminal penalties for his failure to comply therewith." *Id.*

In *United States v. Skozcen*, 405 F.3d 537 (7th Cir. 2005), we faced a situation analogous to the one addressed in *Boggs.* The defendant in *Skozcen* was arrested in Illinois with 325,000 packs of unstamped cigarettes in his possession. *Id.* at 541. The defendant argued that because the cigarettes

"were to be sold out of the state and never within Illinois," they were not subject to Illinois's cigarette tax, and, therefore, the cigarettes were not required to bear Illinois tax stamps. *See id.* at 547. We ultimately did not need to decide whether the defendant's intention to sell the cigarettes outside Illinois foreclosed his conviction under the CCTA, however, because we found that the cigarettes at issue had become subject to Illinois's cigarette tax even before they came into the defendant's possession. *See id.*

Illinois subjects all cigarettes sold or otherwise disposed of within the state to its cigarette tax and requires those cigarettes to bear stamps evidencing payment of the tax. *See* 35 ILCS 130/2-3. Because the defendant in *Skozcen* had purchased the cigarettes at issue in Illinois, the cigarettes had become subject to Illinois's cigarette tax at the time of that purchase (at the latest). *See Skozcen*, 405 F.3d at 547. Accordingly, the unstamped cigarettes were "contraband" under the CCTA regardless of what the defendant did with the cigarettes after purchasing them. *See id.* Under these circumstances, we held that the defendant's intention to sell the cigarettes outside Illinois was irrelevant to his conviction under the CCTA. *Id.* We did not address, however, whether a defendant's intention to sell cigarettes outside the state in which the cigarettes were found would be relevant where, as here, the cigarettes were not already subject to the state's cigarette tax. Because the CCTA incorporates state law in defining contraband cigarettes, the resolution of this issue necessarily rests on the applicable state's laws.

We are not persuaded that Mr. Mohamed's violation of Indiana's requirements for transporting unstamped cigarettes over Indiana highways alone is sufficient to support

his conviction for violation of the CCTA. As an initial matter, unlike in *Boggs*, the government cannot rely on the evidentiary presumption created by state law here. Under Indiana Code section 6-7-1-24(d),

> [t]he possession of more than [1,500] cigarettes in packages not bearing Indiana tax stamps by any person other than a distributor, a common carrier, or an employee of the state or federal government performing his official duties in the enforcement of this chapter constitutes prima facie evidence that the cigarettes are possessed for the purpose of sale.

Ind. Code § 6-7-1-24(d). Read fairly, this provision creates a presumption that a person (apart from the three listed exceptions) possessing more than 1,500 cigarettes not bearing Indiana tax stamps has the cigarettes available and intended for sale within the state.[6] The jury instructions, however, made no mention of the presumption, and the government never argued at trial that it applied. Had the government actually relied on the presumption at trial, Mr. Mohamed may have elected to present evidence rebutting the presumption, rather than rest his defense without presenting affirmative evidence. Thus, unlike in *Boggs*, the government cannot use the presumption to its advantage on appeal.

Without the benefit of the presumption, the government has not presented sufficient evidence to allow a reasonable trier of fact to determine that Mr. Mohamed intended to sell, distribute, or otherwise dispose of the cigarettes within Indiana. Although Mr. Mohamed acknowledges on appeal that

---

[6] Mr. Mohamed does not challenge whether this state-law presumption applies in federal court, so we will assume that it does.

he violated Indiana's requirements for transporting un-stamped cigarettes across the state, the CCTA does not make every violation of a state's cigarette taxation laws a federal crime. *See* 18 U.S.C. § 2341(2); *see also United States v. Wilbur*, 674 F.3d 1160, 1173–74 (9th Cir. 2012) ("The CCTA, however, does not make cigarettes 'contraband' under federal law simply because they are contraband under state law."). Only cigarettes that "bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found" qualify as contraband cigarettes under the CCTA. *See* 18 U.S.C. § 2341(2); *Wilbur*, 674 F.3d at 1174. If Congress had intended to make all cigarettes trans-ported in violation of state law "contraband," it could have done so. Congress, however, chose to limit the definition of "contraband cigarettes" to cigarettes that fail to bear evidence of applicable state or local cigarette taxes, and we must enforce the statute according to its plain terms. *See Sebelius v. Cloer*, --- U.S. ---, 133 S. Ct. 1886, 1896, 185 L. Ed. 2d 1003 (2013) ("[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotation marks and citation omitted)). Accordingly, under the CCTA's plain language, "[i]f there are no 'applicable State or local cigarette taxes,' cigarettes are not contraband, regardless of whether they were transported in violation of state law." *Wilbur*, 674 F.3d at 1173–74.

The legislative history of the CCTA provides further support for this interpretation of its terms. As the legislative history establishes, Congress intended the CCTA to supple-ment, but not supplant, states' enforcement of their own cig-arette tax statutes. *See* S. REP. 95-962 at 3-9. In enacting the

CCTA, Congress sought to help states avoid large-scale revenue losses and prosecute major cigarette traffickers while ensuring that the primary efforts to stop cigarette smuggling remained with the states. *See id.* at 9. With these goals in mind, it makes sense that Congress would focus federal efforts under the CCTA on prosecuting offenders who skirt applicable state and local cigarette taxes while leaving enforcement of other aspects of states' cigarette taxation schemes to the states themselves.

We, therefore, find that Mr. Mohamed's violation of Indiana's requirements regarding the transportation of unstamped cigarettes alone cannot serve as the basis for his conviction. This, however, does not end our inquiry. We must first determine whether the government presented sufficient evidence at trial to prove that Mr. Mohamed possessed the cigarettes at issue for the purpose of selling, using, consuming, handling, or distributing them within Indiana—not just that he failed to comply with Indiana's requirements for transporting unstamped cigarettes across the state.

As explained above, the government did not rely on the presumption under Indiana Code section 6-7-1-24(d) at trial. We must therefore decide whether, absent the presumption, the jury could have reasonably inferred from the evidence at trial that Mr. Mohamed possessed the cigarettes at issue for sale, use, consumption, handling, or distribution in Indiana. *See United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) ("A Rule 29 motion calls on the court to distinguish between reasonable inferences and speculation."). The government's evidence at trial was sufficient to give rise to an inference that Mr. Mohamed was trafficking cigarettes when Officer

Helmer pulled him over. Mr. Mohamed had in his possession over 23,000 Newport cigarettes purchased from various gas stations in Kentucky, a low-tax state, along with a trash bag containing over $15,000 in cash. Special Agent Neie testified that cigarette traffickers typically travel from retailer to retailer purchasing cigarettes—like Mr. Mohamed had—because of restrictions retailers place on the amount of cigarettes a customer can purchase at one time. Special Agent Neie also testified that Newports are one of the two most frequently trafficked brands of cigarettes. Furthermore, when Officer Helmer asked Mr. Mohamed how much money he makes selling cigarettes, Mr. Mohamed answered "not much," effectively admitting that he does in fact sell cigarettes for profit. This evidence is more than sufficient to show that Mr. Mohamed was engaged in cigarette trafficking and that he intended to sell the cigarettes at issue in a state with higher cigarette taxes than Kentucky.

The government's evidence at trial, however, was not sufficient to show that Mr. Mohamed intended to sell the cigarettes *in Indiana*. Thirty-eight states had higher cigarette taxes than Kentucky in 2012, and, as Special Agent Neie testified, Mr. Mohamed could have made a profit selling the cigarettes in any one of those states. The government presented no evidence that Mr. Mohamed had taken any steps to sell, distribute, or otherwise dispose of the cigarettes in Indiana, and although Mr. Mohamed admitted to Officer Helmer that he sells cigarettes, he gave no indication of *where* he sells them. The government's evidence and arguments at trial simply did not focus on whether Mr. Mohamed intended to sell the cigarettes in Indiana, and the jury's questions to the district court understandably reflected their confusion over this issue. Significantly, during sentenc-

ing, the government took the position that Mr. Mohamed intended to sell the cigarettes in New York, where he stood to make substantially more profit than selling them in Indiana due to New York's $4.35 per pack tax rate.

We do not believe that Mr. Mohamed's possession of cigarettes in Indiana under these circumstances is sufficient to support a finding, beyond a reasonable doubt, that Mr. Mohamed intended to sell, distribute, or otherwise dispose of the cigarettes in Indiana. *See United States. v. Katz*, 582 F.3d 749, 752 (7th Cir. 2009) ("A jury cannot speculate its way out of reasonable doubt."); *see also United States v. Griffin*, 684 F.3d 691, 698 (7th Cir. 2012) (evidence that the defendant had easy access to firearms and could have possessed them in a matter of seconds was not sufficient to prove that he intended to exercise control over them); *Piaskowski v. Bett*, 256 F.3d 687, 692–93 (7th Cir. 2001) (evidence that the defendant was present at the site of a murder and later referred to "shit going down" was insufficient to prove that he participated in the murder directly or as a conspirator); *United States v. Harris*, 942 F.2d 1125, 1129–30 (7th Cir. 1991) (reversing the defendant's conviction where the evidence was "as consistent with an inference of innocence as one of guilt"). Without evidence that Mr. Mohamed intended to sell or otherwise dispose of the cigarettes in Indiana, the government failed to prove beyond a reasonable doubt that Indiana law required the cigarettes to bear Indiana tax stamps. Mr. Mohamed's conviction, therefore, cannot stand.[7]

---

[7] This does not mean that Mr. Mohamed's conduct necessarily must go unpunished. As Mr. Mohamed has acknowledged, the State could have charged him with a misdemeanor for violating Indiana's requirements for transporting unstamped cigarettes. *See* Ind. Code § 6-7-1-19.5. The

**CONCLUSION**

For the foregoing reasons, we REVERSE the decision of the district court and REMAND with instructions to enter a judgment of acquittal.

---

CCTA, moreover, contains recordkeeping and reporting requirements that apply to the shipment, sale, or distribution of more than 10,000 ciga-rettes in a single transaction, *see* 18 U.S.C. § 2343, and violations of those requirements also may result in criminal liability. *See* 18 U.S.C. § 2344(b). We make no comment on whether the government's evidence at trial would have been sufficient to convict Mr. Mohamed under Indiana state law or under other provisions of the CCTA. We hold only that the evi-dence at trial was not sufficient to support a conviction for violation of 18 U.S.C. § 2342(a).